My name is Patrick Conte. I'm the attorney for the petition on Mr. Pafanah. He is present here in court with me today. Your Honours, I briefly make a response to the government's response to the short cause matter in a letter dated January 12, 2009. My client has raised a couple of issues in our petition for review. Among them is whether he was properly denied the privilege of voluntary departure. The government has raised that this court does not have jurisdiction because this is a discretionary matter. And we beg to differ because there are statutory requirements that an individual needs to meet first before the court can exercise its discretion to grant voluntary departure. And the key issue here is my client's original birth certificate has been retained by government for a long period of time, from the first day that he went for his asylum hearing or asylum interview. And true, because of these proceedings, government had the document. Before the immigration judge, they never raised an issue as to whether they properly retained this document or not. And today they are telling me that they had to retain it because the document is fraudulent. I think that's a very improper way. It's a violation of my client's due process rights. For example, if the government believed that the document was not authentic, they should have raised that an issue, and they always do that. So I don't know why in this particular case, all this length of period, they have never done that. And we believe that my client was improperly denied voluntary departure, and the court should reverse the immigration judge's findings on that. We believe that as the judge has observed, if my client had the opportunity to apply for an emergency travel document, he would have, you know, granted him voluntary departure. And my clients, you know, come from a war-torn country where the only thing he had was his original birth certificate, and the government kept it throughout this process, and never, you know, brought it forward, never questioned its authenticity until today. And I think we lack that. We should be given an opportunity to make that response. Can I just get a clarification? The immigration judge focused on the lack of a valid birth certificate, correct? No, Your Honor. The judge only said because he does not have an emergency travel document. He says the respondent qualified for voluntary departure, except he does, and I think there's a knot missing, have the valid travel document. Yes, but in order for him to do that, he needs to present some document to his embassy to see if they will grant him an emergency travel document. And he lacked that opportunity because the government kept his original birth certificate. Counsel, is the record adequate to describe what country conditions currently are like? Well, we have our disagreement with what the government has presented. One of the key things we said, even at the time he has the individual hearing, the country condition still shows that there were significant problems, especially in areas which are outside of the main metropolitan area, where the government does not seem to have any control up to that point in time. So I guess the question for us usually in these cases, is there some part of the country in which he would be safe? Well, Your Honor, it's subject to arguments because even in the main metropolitan area, government does not have control, and that is even evident in the State Department report. Well, we don't get there unless there is a showing of past persecution or a well-founded fear of future persecution that you've shown. And I don't see how there is any showing that any of the difficulties that Mr. Fofana encountered were on account of political opinion or his tribal or family relationships, but rather were just widespread, unfortunate, untargeted violence that affected everybody in the neighborhood. Your Honor, we raised this issue before the IG and also before the BIA. We believe that there is some impeded political opinion here and also membership in a particular social group, because the rebels were not just targeting everybody at random, although there was civil war, but they were focusing attention to people who differed in significant manner from the mainstream of the rebel group, because Mr. Fofana's religion and tribe shows that he was somebody who could support the government, and these people were after the government, and because of this reason, he was targeted, and his family. You know, a claim which was advanced to the immigration judge, but never advanced again, was whether or not on humanitarian grounds, because of the terrible violence that he observed, that he suffered emotional and other problems so that it would be very difficult to go back, but I don't find any place in the record where that was advanced to the BIA or advanced to us, so I don't think it's an issue that we can look at. Am I wrong? Is there something in the record that I should be looking at? I think you are correct, Your Honor. I don't think that argument was advanced, but at the immigration judge's level, we believe that the court has inherent power to grant abuse on humanitarian grounds, and from my limited experience, this is not something which easily comes up before the IGs. I will reserve the rest of my time for the court today. Certainly. Mr. Poli? Good morning. May it please the Court? Brianna Stripley on behalf of the Respondent, the Attorney General. This Court should affirm the immigration judge's decision and deny the petition for review because Mr. Fofana failed to demonstrate that the record compels a finding that he suffered past persecution on account of a statutorily protected ground. Rather, the immigration judge's decision that Petitioner suffered harm on account of civil strife in Sierra Leone that ended in 2002 is supported by the record. There is substantial evidence in the record that the harm inflicted on Petitioner was a result of this civil strife, and the fact that the IJ concluded that this harm was inflicted indiscriminately and not on a protected ground is also supported by the record. Petitioner, when asked, when the RFU came to your community, why did they seek you out? He responded, they took a lot of people from the village. They attacked the whole town. He was asked, why do you think the rebels were interested in you? He responded, they were doing it to everybody. They were harming everybody so they would not disturb the government because they couldn't get power, so they were doing this, mistreating everybody. Petitioner on appeal basically attempts to offer three challenges to establish the nexus ground, first being that he was harmed on account of his imputed political opinion, which is sort of a deviation from what he raised along the way, which was his basic, straightforward political opinion. His two other ones relate to particular social group claims, one that he was harmed on account of his membership in his particular social group being his family, and the second being that he was harmed on account of his membership in a particular social group being the Saniki tribe. I'd like to address the political opinion claim first. The record does not support, much less compel, a contrary finding that Petitioner was harmed on account of his political opinion. He was asked point blank, are you involved in any political activities of any kind? Never. Do you support any political groups? Never. Have you ever voted? Never. He was asked directly whether he supported the president, Cava. To this he reiterated, I did not support politics. Counsel did not and cannot cite even one page in the administrative record, in either his appeal to the board or his appeal to this court, that supports one page in which it would basically establish that he had any nexus to political opinion, that he was harmed on this account. And in fact, Petitioner's counsel in the transcript concedes that, quote, it is indicated that you don't have any political affiliations. Counsel, something in the record that caught my attention was the fact that he said because of his religion, he was unwilling to join and fight. Now, that's a religious belief and I suppose he was discriminated against because of that. I'm not sure he's advanced that as a real argument, but he might either have a humanitarian claim or one based on his religious belief. Is there anything in the record that would help that argument along? Well, unfortunately, no, Your Honor. If that was raised in the transcript, as you had stated previously, it was not raised to the board, so he failed to exhaust it, and neither did he raise it in his brief to this court, so he failed. He waived his argument there. But even so, the real crux of this review is whether or not the record compels a contrary finding to the immigration judges. And again, because that's not raised and it's not exhausted, we don't even get there. But even if we did, the record doesn't compel a contrary finding. Tell us what you know about the country conditions. I think this, on an onset, as somewhat of a housekeeping measure, I'd like to correct the footnote 6 in the Respondent's brief. In particular, oh, my apologies, the immigration judge actually in this instance addressed this with respect to the CAC claim. Because the board never was silent, basically, on whether or not to change country conditions. Because the board found that the nexus requirement was fulfilled, he never got to that decision. So that's not presently before this court. But to the extent that he preserved his Convention Against Torture claim, the immigration judge found that in the 2005 report that's in the administrative record, it stated that it's a constitutional republic. It has a directly elected president that, according to all watchdog groups, was free and fair. The 11-year civil war officially ended in 2002. And the U.N. peacekeepers who were there actually withdrew from the country in 2004 because everything was stable and peaceful. And, in fact, there's the U.N. Special Court of Sierra Leone war crimes. The tribunals were, in fact, prosecuting the RUFs. And I think it's a good sign that the RUF members were actually represented by NGOs in these to show fair group and constitutional rights, which is guaranteed already in Sierra Leone. The government would also state that the petitioner has failed to exhaust both of his particular social group claims by failing to exhaust that and raise them properly to the board. Therefore, it really turns on the political opinion claim and the imputed political opinion claim. What about his argument putting too fine a point on how crisply it may have been put below, but since he's raised it here, I'd like to hear your thoughts on it, Because of his tribe, RUF would say that that tribe was more likely to be pro-government, whether they were attacking everybody in the village or not. The fact is that they were picking on a tribe that was perceived as pro-government. Well, again, the record doesn't compel a contrary finding. In fact, the record supports the opposite in the sense that he never even checked off social group in his asylum application, but to the extent that this was actually in the ‑‑ basically on cross-examination, the only time it came up, he was asked, are you a member of a particular tribe, Saniki? Did you ever tell you that you were a member of the wrong party or the wrong tribe or anything like that? Despite being captive for three months, no. So there's no evidence in the record that he was actually targeted because of his Saniki tribe. There's no evidence in the record of the demographic of his village, so it doesn't actually in the record say he was persecuted because of his Saniki tribe. It says they attacked the village, and there's nothing in the record to say what the demographic of that village is. As a practical matter, do we know if this one tribe occupy a village or a location? To be honest with you, I don't know the answer to that question, and the record doesn't support that there are these particular demographics. So it's really unclear from the record, and I don't have any personal knowledge as to that. But as far as the particular social group claim goes for that, the document that Petitioner actually submitted, which was a human rights watch document from 1999, so amidst the unrest, it basically said that the only targeted particular social groups were Nigerians, politicians, journalists, missionaries, and members of civil and government servants, human rights activists, and never did at once in that entire report state that Saniki tribe or tribes in particular. In fact, RUF is actually composed of members of multiple tribes, so to say that that would be one of the instances is really not supported by the record. If there are no further questions from the panel. I don't think so. Great. I'll submit on the briefs. Thank you. Mr. Conte. Your Honor, for an individual to qualify for Salem, it doesn't have to be an express opinion. It could be imputed. And from the characteristics of the individual based on their tribe or ethnicity or region, it's what the prosecutor sees them to be. And I think there is reasonable evidence to show that my client was seen in a different perspective by this prosecutor at RUF. And as one of you have. Do you have any specific place in the record that you can point to that would support this proposition? I think my client's testimony shows that. And he indicated, first of all, the rebels were after me because I support me and my parents support. We are assumed to support Mr. Kaba because we come from the Saniki tribe and because we are Muslims and because Mr. Kaba is a Muslim. So there's a direct correlation between his religion, tribe, with the imputed opinion of the prosecutors. So I don't think there's any problem in trying to see a link between the harm and the protected ground here. And as far as the human right report is concerned, the government talked about certain things that happened in terms of the elections, in terms of U.N. withdrawal. But the same record also shows that there is still significant problems, even though all these good things have happened. And even at the time, the government doesn't have control over most parts of the country, even in the metropolitan area. So to say that, hey, everything is fine, you can go home, I don't think that's a reasonable conclusion that could be drawn here. All right. Thank you, counsel, for your argument. The matter just argued will be submitted and will mix to your argument and allowed.
judges: Fletcher, Rymer, Fisher